UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **GREAT LAKES TRANSPORTATION HOLDING L.L.C, d/b/a METRO CARS.,**<br><br>Plaintiff,<br><br>vs.<br><br>**BASHEER ELHUBISHI, et al.,**<br><br>Defendants. | 2:18-CV-13680-TGB-APP<br><br>HON. TERRENCE G. BERG<br><br>**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART GREAT LAKES TRANSPORTATION HOLDING L.L.C.'S MOTION FOR CONTEMPT**<br><br>**(ECF NO. 9)** |

Plaintiff Great Lakes Transportation Holding L.L.C., d/b/a Metro Cars ("Metro Cars") moves for an order of contempt against Basheer Elhubishi and Elhubishi's company, MBC Airport Transportation, LLC (together, "Elhubishi") for alleged violations of a stipulated permanent injunction (the "Injunction") not to violate Metro Cars' servicemark. ECF No. 9 ("the Motion"). Metro Cars also moves for an order awarding them unjustly earned profits; requiring Elhubishi to take certain steps relating to the Injunction; and awarding Metro Cars attorney's fees and costs. For the following reasons, Metro Cars' Motion is **GRANTED IN PART AND DENIED IN PART**. The Court will schedule an evidentiary hearing on the issue of whether Elhubishi should be held in civil contempt. The Court construes Metro Cars' Motion as making a two-part request: first,

1

to enforce the Injunction and second, to sanction Elhubishi for violating the Injunction. The first request is **GRANTED** in that the Court finds that Metro Cars has set forth a prima facie case showing that Elhubishi is in violation of the Injunction, but the second request the Motion makes is **DENIED** to the extent it requests the Court to hold Elhubishi in contempt prior to the hearing.

## I. BACKGROUND

Metro Cars, a Michigan-based taxi and transportation company, owns a servicemark on its name. ECF No. 9-2, PageID.82 (Metro Cars servicemark), PageID.85 (assignment to Metro Cars). Elhubishi owns MBC Airport Transportation LLC, another Michigan-based taxi company, which had gone by the name "Metro Black Cars." ECF No. 9, PageID.53. Metro Cars sued Elhubishi for trademark infringement in 2018. *Id*.

On January 15, 2019, Elhubishi and Metro Cars stipulated to a permanent injunction ("the Injunction"), which prohibited Elhubishi from, among other things:

> [Using the Metro Cars servicemark] or colorable imitations thereof and other designs, designations, and indicia which are likely to cause confusion, mistake, or deception with respect to [Metro Cars'] rights, including, but not limited to . . . any other name using the words "Metro Car," "Metro Cars," and/or "Metro" and "Cars" in close proximity in connection with any car service; whether as business names or in advertisements . . . .

2

ECF No. 9, PageID.54, *citing* ECF No. 7. The Injunction also prohibited Elhubishi from "using 'Metro' and 'Cars' in close proximity or any variations thereof as meta tags for, or as html codes for, [Elhubishi's] website(s)." ECF No. 9, PageID.54.

Nothing more happened in this case until July 15, 2024, when Metro Cars sent Elhubishi a demand letter alleging that Elhubishi was violating the Injunction. ECF No. 11-3, PageID.151. The allegations in the demand letter track Metro Cars' allegations in the Motion:

1. Up to July 2024, well after the issuance of the Injunction, Elhubishi had a website with the URL of "metroblackcars.com," which redirected users to a website of Elhubishi's with the URL of "metroblacksedans.com." ECF No. 9, PageID.55; ECF No. 11-3, PageID.151.

2. Elhubishi operated a Facebook page titled "Metro Black Sedans," which contained advertisements for "Metro Black Cars." ECF No. 9, PageID.55.

3. Elhubishi's "metroblacksedans.com" website uses the terms "metro cars." *Id.* at PageID.58.

Elhubishi has not denied these allegations. ECF No. 11, PageID.128-29. Instead, he shut down the "metroblackcars.com" website, and claims that he instructed his web agency not to use the terms "metro car" and "metro cars" in any tags or code of his "metroblacksedans.com"

website. *Id.* at PageID.129. Unsatisfied with these actions, ECF No. 11-4, PageID.153, Metro Cars filed this Motion.

Metro Cars requests that the Court order:

1. That Elhubishi is in contempt of court for failing to comply with the Injunction, and that Elhubishi must comply with the Injunction;

2. That Elhubishi cease operating the website "metroblacksedans.com;"

3. That Elhubishi disclose and transfer to Metro Cars any websites using the terms "Metro" and "Car," including "metroblacksedans.com;"

4. That Elhubishi identify all the ways in which Elhubishi has used the terms "Metro" and "Car," and cease using either of those terms;

5. That Elhubishi cease using "Metro" and "Cars" in close proximity as internet search terms;

6. That Elhubishi notify any customers who provided reviews of Elhubishi's company referencing "Metro Cars" that Elhubishi's companies are not "Metro Cars," and to maintain a log of customers who inquire about "Metro Cars" for the event of future orders of this Court;

7. That Elhubishi pay Metro Cars for the profits earned by violation of the Injunction, and for Metro Cars' attorney's fees and costs; and

8. That Elhubishi file and serve on Metro Cars a sworn report accounting for profits that Elhubishi earned by violating the Injunction.

ECF No. 9, PageID.42-44.

Metro Cars filed their Motion on August 12, 2024. ECF No. 9. Elhubishi filed a Response on August 26, 2024, ECF No. 11, and Metro Cars filed a Reply on September 3, 2024. ECF No. 12. Then, on January 23, 2025, Metro Cars filed a "Notice of Additional Violations of Injunction." ECF No. 15. Metro Cars alleged that up to January 22, 2024, Elhubishi controlled another website, "detroitlimoservice.com," which used the term "Metro Cars" in its code. ECF No. 15, PageID.188. The Court has confirmed that as of February 6, 2025, at 10:59 a.m., "detroitlimoservice.com" has a functioning link for a page titled "Metro Airport Limo Cars." Detroit Limo Service, *Metro Airport Limo Cars*, https://www.detroitlimoservice.com/metro-airport-limo-cars/ (last visited Feb. 6, 2025, 10:59 a.m.).

On February 3, Elhubishi notified the Court and Metro Cars that it had removed the references to "Metro Cars" from the detroitlimoservice.com website. ECF No. 16, PageID.204. However, the *Metro Airport Limo Cars* webpage remained active as of 10:59 a.m. on February 6. And when the Court did a Google search for Metro Airport Limo Cars, the sponsored first option was a link to detroitlimoservice.com, with text: "Metro Airport Car Service."

5



## II. ANALYSIS

The Court has reviewed Metro Cars' and Elhubishi's arguments for what actions the Court should take.

### A.     Elhubishi Has Likely Violated the Injunction

For a district court to find a litigant in contempt, "the movant must produce clear and convincing evidence that shows that '[the nonmovant] violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Elec. Workers Pension Tr. Fund of Loc. Union # 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) ("*IBEW*"). The Sixth Circuit has also cited to out-of-circuit caselaw finding that "a party may only be held in contempt of a court order if (1) the order clearly and unambiguously imposed an obligation on the party; (2) proof of the party's noncompliance with the order was clear and convincing; and (3) the party did not diligently attempt to comply with the order." *McAlpin*

*v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 504 (6th Cir. 2000) (*citing EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir. 1985), *aff'd.* 478 U.S. 421 (1986)). "Willfulness is not an element of civil contempt, so the intent of a party to disobey a court order is irrelevant to the validity of a [civil] contempt finding." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (*internal quotation marks and formatting removed, quoting In re Jacques*, 761 F.2d 302, 306 (6th Cir. 1985)).

Here, the Injunction clearly and unambiguously imposed an obligation on Elhubishi not to use the terms "Metro" and "Cars" in close proximity in connection with any car service, including in meta tags or codes for websites. ECF No. 9, PageID.54, *citing* ECF No. 7. But Elhubishi did those things: he operated a website with the URL of "metroblackcars.com" to redirect internet users to another website he operated. ECF No. 9, PageID.55. He used the terms "Metro" and "Cars" in close proximity on his website in connection with a car service. *Id.* at PageID.58. Metro Cars alleged that Elhubishi operated the "metroblackcars.com" webpage as recently as June 2024, and Elhubishi did not deny doing so in his Response. ECF No. 11, PageID.134; ECF No. 11-5, PageID.157. Instead, he asserted that he cured the violations. *Id.* at PageID.134-35. Metro Cars also presented evidence of Elhubishi's website's code, which included the terms "Metro Cars." ECF No. 9, PageID.57-58.

On this record, it is far from clear whether Elhubishi has diligently attempted to comply with the Injunction. Elhubishi responded to Metro Cars' accusation that he was using the term "Metro Cars" in his website, and operating a "metroblackcars.com" website, by "quickly promis[ing] to resolve the issue," ECF No. 11, PageID.134, including by promising to "inform his web agency" about the issue, and ensure that the terms are no longer used. ECF No. 11-3, PageID.151. This may well be a diligent response to Metro Cars' notice that Elhubishi was violating the Injunction, but certainly a "diligent attempt" to comply with the Injunction would also involve not having operated the violating website and not using the prohibited terms in the first place. From the available evidence it is unclear whether Elhubishi informed his web agency to make these changes on January 15, 2019, the day the Injunction went into force—or if not, whether he has any excuse for not having done so.

If Elhubishi actually had "informed his web agency" to remove references to "Metro Cars" from Elhubishi's car service websites, how is it that Elhubishi's "detroitlimoservice.com" has a functioning link for a page titled "Metro Airport Limo Cars?" Detroit Limo Service, *Metro Airport Limo Cars*, https://www.detroitlimoservice.com/metro-airport-limo-cars/ (last visited Feb. 6, 2025, 10:59 a.m.).

As the record stands before the Court, however, Metro Cars has not presented sufficient evidence for the Court to find by a preponderance of the evidence that Elhubishi did not "[take] all reasonable steps within

8

[his] power to comply with the court's order," the Injunction. *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989). A hearing is necessary to permit the Court to receive and weigh the evidence regarding what efforts Elhubishi undertook to comply, and what his knowledge was regarding the non-compliant websites.

The Court therefore **DENIES** Metro Cars' Motion to the extent it seeks a factual finding that Elhubishi is in contempt. Instead, the Court **ORDERS** that a hearing be held at which Metro Cars and Elhubishi will present evidence concerning Elhubishi's alleged violations of the Injunction, and the steps that Elhubishi has taken to comply with the Injunction since its inception.

### B. Metro Cars Requests Disgorgement of Elhubishi's Profits as Compensation for his Unjust Enrichment

Metro Cars seeks an order that as either as a trademark infringement remedy or as a civil contempt remedy, that Elhubishi be required to disgorge any profits earned by the infringing activity. ECF No. 9, PageID.62-63.

Disgorgement is inappropriate in this instance as a form of relief for violating an injunction against trademark infringement. True, the Lanham Act can support an award of profits based on unjust enrichment. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 605 (6th Cir. 1991), *citing* 15 U.S.C. § 1117(a). But to receive disgorgement of unlawfully

9

obtained profits under the Lanham Act, Metro Cars must first prove Elhubishi's total sales. *Id.* Metro Cars has not done so.

However, disgorgement may be appropriate, even without proof of direct loss, as a civil contempt remedy for unjust enrichment. "[Under] a theory of unjust enrichment, a contempt plaintiff is entitled to defendant's profits without submitting direct proof of injury, much less proof that any such injury 'approximated in amount the defendant's profits' . . . . an award based on the defendant's profits, resting upon principles of unjust enrichment, focuses on the defendant's wrongdoing, not on damage to the plaintiff." *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5-6 (2d Cir. 1989) ("*Manhattan*"); *see also A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 296 (S.D.N.Y. 2000) (*citing Manhattan*, 885 F.2d at 6) ("The Second Circuit has approved the use of compensatory sanctions based on the defendant's profits, without requiring proof of actual injury to the plaintiff, under a theory of unjust enrichment."); *McKeon Prods., Inc. v. Honeywell Safety Prods. USA, Inc.*, No. 95-CV-76322, 2022 WL 397565, at *10 (E.D. Mich. Feb. 9, 2022)(Borman, J.) ("*McKeon*") (*citing Manhattan*, 885 F.2d at 6).

In *McKeon*, Judge Borman also distinguished *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 695 (6th Cir. 2000), which Elhubishi cites, ECF No. 11, PageID.136, for the proposition that there can be no disgorgement remedy without proof that the plaintiff suffered losses: *Balance Dynamics* involved enforcing disgorgement based on a

10

false advertising claim, whereas *McKeon* and *Manhattan* involved disgorgement related to prohibited sales in violation of a court order. 2022 WL 397565, at *10. In the context of violations of a court order, disgorgement without proof of loss by the plaintiff is acceptable. *Manhattan*, 885 F.2d at 6. Disgorgement may be appropriate here too.

Elhubishi would respond that disgorgement is inappropriate without evidence from which the Court can make a "reasonable approximation" of the amount of any unjust enrichment. *See* ECF No. 11, PageID.137, *citing Rochow v. Life Ins. Co. of N. Am.*, 851 F. Supp. 2d 1090, 1093 (E.D. Mich. 2012). Elhubishi would be correct. However, courts may allow discovery in contempt proceedings. *See State of N.Y. v. Shore Realty Corp.*, 763 F.2d 49, 53 (2d Cir. 1985); *Olson Rug Co. v. N.L.R.B.*, 291 F.2d 655, 659 (7th Cir. 1961).

If after the considering the evidence presented at the hearing, the Court finds Elhubishi to be in contempt, Metro Cars could file a motion to compel discovery from Elhubishi as to the profits he has earned from his violations of the Injunction. *See A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, No. 96 CIV. 9721PKLTHK, 2002 WL 2012618, at *11 (S.D.N.Y. Sept. 3, 2002) (ordering a defendant to produce a detailed statement of all net profits from sales which violated a preliminary injunction), *citing Manhattan*, 885 F.2d at 6; *see also McKeon*, 2022 WL 397565, at *9-10 (ordering discovery to determine the amount of retail sales of a party subject to disgorgement for sales in violation of a court

11

order). Such discovery would then allow this Court to make a reasonable approximation of any unjust enrichment, which would then allow this Court to order disgorgement as a contempt remedy.

However, the Court will **NOT** grant discovery on Elhubishi's profits unless and until the Court grants Metro Cars' Motion for Contempt.

### C. Elhubishi Must Show at the Hearing Why He Should Not Be Subject to a Contempt Sanction

Civil contempt sanctions can be imposed "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *IBEW*, 340 F.3d at 379.

Metro Cars has presented evidence showing Elhubishi violated the Injunction. At the hearing, Elhubishi must show why contempt sanctions are not necessary to coerce his continuing compliance with the Injunction, what steps he has taken since the issuance of the Injunction to diligently comply with it, and why disgorgement of profits obtained from violating the Injunction and confusing customers is not appropriate.

Depending on the results of the hearing, Metro Cars may renew its motion for attorney's fees and costs, which the Court would then consider. The Court notes that while it may award attorney's fees to a successful civil contempt movant, awards of attorney's fees may be improper when the contemnor made a good faith effort to comply. *Cernelle v. Graminex, L.L.C.*, 437 F. Supp. 3d 574, 608 (E.D. Mich. 2020), *amended on reconsideration in part*, 539 F. Supp. 3d 728 (E.D. Mich. 2021), *aff'd*, No.

21-1579, 2022 WL 2759867 (6th Cir. July 14, 2022), *and aff'd*, No. 21-1579, 2022 WL 2759867 (6th Cir. July 14, 2022) (*citing Chere Amie, Inc. v. Windstar Apparel Corp.*, 175 F. Supp. 2d 562, 567 (S.D.N.Y. 2001)). This good faith standard is different from the contempt standard, which requires that Elhubishi "took all reasonable steps within [his] power to comply with" the Injunction, regardless of good faith. *Peppers*, 873 F.2d at 969.

The Court's granting—or denial—of attorney's fees is within its discretion. *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023). The Court would be disinclined to grant attorney's fees absent a showing of lack of good faith by Elhubishi.

### D. Metro Cars' Other Requested Relief

Apart from seeking a finding that Elhubishi is in contempt, Metro Cars seeks various orders from the Court. Most of them will be denied under the Court's broad discretion in fashioning injunctive relief. *See United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 495 (2001).

#### i. Elhubishi Need Not Shut Down or Transfer **metroblacksedans.com**

Metro Cars sought an order requiring Elhubishi to cease operating "metroblacksedans.com," or any website domain incorporating "Metro" and "Car" and variations thereof, and also requiring Elhubishi to transfer domain names using such terms to Metro Cars, including

13

"metroblacksedans.com." ECF No. 9, PageID.65-66. But this result is not required by the Injunction.

In relevant part, the Injunction states that Elhubishi is enjoined from "using [the] Servicemark "Metro Cars" . . . or colorable imitations thereof . . . which are likely to cause confusion, mistake, or deception . . . in connection with any car service." ECF No. 7, PageID.34. Is "metro black sedans" a "colorable imitation" of "Metro Cars" which is likely to cause confusion, mistake, or deception, in connection with Elhubishi's car service? Maybe. Metro Cars points to internet reviews of Elhubishi's companies which refer to the companies as "Metro Cars," and a confused friend or family member of a Metro Cars employee who mistakenly booked with Elhubishi's company. ECF No. 9, PageID.56; ECF No. 15, PageID.189.

In the copyright infringement context, courts do look at evidence of actual confusion in determining whether the defendant's actions are likely to confuse consumers. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). But Metro Cars has not pled in detail how the website title of "metroblacksedans.com" clearly violates the Injunction, in contrast to its detailed pleading of how the use of the terms "Metro" and "Cars" in close proximity in webpages and code does violate the Injunction. In deciding whether "Metro Black Sedans" is a "colorable imitation," the Court notes that the phrase "Metro Black Sedans" is different from the phrases given

14

in the Injunction as examples of impermissible uses: unlike Metro Black Sedans, the examples provided all use the words "Metro" and "Cars" in close proximity. With the lack of briefing on the subject and the existing differences between the marks, at this point the Court cannot find that "metroblacksedans.com" violates the Injunction.

And even if it did, such that the website would have to be shut down according to the Injunction, there is no remedy in the Injunction requiring Elhubishi to transfer any website to Metro Cars. Nor has Metro Cars submitted any authority to demonstrate why the Court should impose that remedy. Therefore, to the extent that Metro Cars' Motion seeks the remedy of Elhubishi shutting down or transferring metroblacksedans.com or any other website to Metro Cars, the Motion is **DENIED**.

### ii. Elhubishi Need Not Identify Every Way he Uses the Terms "Metro" and "Car."

The Court refers here to the following request that Metro Cars made in its Motion:

> Plaintiff respectfully requests the following relief . . . . [an] order requiring Defendant . . . . [to] identify all ways [he uses] the terms "Metro" and "Car" . . . [and] cease referring to the terms "Metro" and "Car" . . . .

ECF No. 9, PageID.65-67.

This request would amount to a modification of the Injunction. First, the Injunction does not require Elhubishi to identify all of the ways

15

he uses those terms. Second, broadly interpreted, this request asks the Court to require Elhubishi to identify and cease any use of *either* the term "Metro" or the term "Car." For example, under this request, if Elhubishi had a website which allowed users to "Choose Your Car," such a use would need to be disclosed and ceased. The same requirements would apply if Elhubishi's website stated: "We serve the Detroit Metro Area."

The Injunction does not require such actions. It only requires Elhubishi to not use the terms "Metro" and "Cars" *in close proximity*, or arguably to otherwise imitate the Metro Cars mark. Metro Cars has not pointed to any part of the Injunction that prohibits Elhubishi from using either of those terms, on their own, not in close proximity with each other, and not in a confusing way. Therefore, the Court will not require that Elhubishi disclose and cease all uses of the terms "Metro" and "Cars." To the extent the Motion seeks that relief, it is **DENIED**.

### iii. Elhubishi Need Not Affirmatively Notify Confused Customers

Metro Cars moved for an order requiring Elhubishi to:

> [Notify] any confused customers who provided online reviews referencing "Metro Car(s)" or who contacted the Enjoined Parties and mentioned "Metro Car(s)" in any way, that the Enjoined Parties are not Metro Cars, and to redirect any customer inquiries for Metro Cars to Plaintiff; and to maintain a log of customers and potential customers inquiring about Metro Cars or Plaintiff in the event of further violation of any Court orders and the Permanent Injunction . . . .

16

ECF No. 9, PageID.65-67.

But as Elhubishi points out, the Injunction does not require this. ECF No. 11, PageID.130. While Metro Cars asserts that "[it] is common to . . . notify affected customers so any confusion can be addressed," ECF No. 12, PageID.170, Metro Cars has not provided any authority to explain why the Court should require Elhubishi to take those actions. To the extent the Motion seeks such an order, the Motion is **DENIED**.

### iv. Elhubishi Must Otherwise Comply With the Injunction

Metro Cars makes several other requests for relief, but those requests can all be accomplished if Elhubishi complies with the Injunction – which Metro Cars moves for as well. ECF No. 9, PageID.65.

Metro Cars moves for an order that Elhubishi "cease using Metro Cars," or any variations thereof, as meta tags . . . or other source code for any websites," and that Elhubishi cease using "Metro" and "Cars" as internet search terms or key word searches. *Id.* at PageID.66. To the extent that "Metro" and "Cars" are used in close proximity, this request is covered by the Injunction. ECF No. 7, PageID.34-35. To the extent that the terms "Metro" and "Cars" are not used in close proximity, or to imitate the Metro Cars servicemark, Metro Cars' request is denied. *See infra*, "Elhubishi Need Not Identify Every Way he Uses the Terms 'Metro' and 'Car.'"

Metro Cars moves for an order that Elhubishi identify all other domain names he owns that violate the Injunction, or that incorporate

17

"Metro" and "Car." ECF No. 9, PageID.42. Metro Cars also moves for an order that Elhubishi cease operating any website incorporating "Metro" and "Car." The Injunction already precludes Elhubishi from "operating websites using a domain name or url that contains the words . . . 'Metro' and 'Cars' in close proximity in connection with any car service." ECF No. 7, PageID.34.

The disclosure request is covered in substance by the Injunction's requirement that Elhubishi stop all such uses, and then file in this court and serve on Metro Cars a sworn, written report detailing how Elhubishi has complied with the Injunction. ECF No. 7, PageID.37. Metro Cars asserts that Elhubishi never filed this required report in the first place. ECF No. 9, PageID.58. Elhubishi does not deny this.

Accordingly, instead of granting the specific requests that Metro Cars has made, the Court **ORDERS** that Elhubishi **SHALL FULLY COMPLY** with the Injunction. In particular, when Elhubishi files his pleading in advance of the Court's hearing on contempt, Elhubishi must provide Metro Cars and the Court with the sworn disclosure required by the Injunction detailing the manner and form in which he has complied with the Injunction.

### III. CONCLUSION

For the reasons stated, Metro Cars' Motion is **GRANTED IN PART AND DENIED IN PART**. The Court **ORDERS** that a hearing be held on **May 28, 2025** in which the Court will hear evidence regarding

18

whether Elhubishi should be held in civil contempt. Elhubishi must file a brief summarizing the evidence he will present, not to exceed twenty (20) pages, within thirty (30) days of the filing of this Order. Within fourteen days after service of Elhubishi's filing, Metro Cars may file a response, which must not exceed fifteen (15) pages. *See* Local Rule 7.1. Within seven days after service of any response by Metro Cars, Elhubishi may file a reply brief, not to exceed seven (7) pages, including footnotes and signatures.

**SO ORDERED**.

Dated: February 6, 2025        /s/Terrence G. Berg
                               HON. TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE